IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RANJIT BEDI, an individual, on his own behalf and on behalf of all similarly situated,

Plaintiff,

v.

HEWLETT-PACKARD COMPANY and STAPLES, INC.,

Defendants.

No. 07 CA 12318-RWZ

## CLASS ACTION COMPLAINT

Ranjit Bedi ("Bedi" or "Plaintiff"), for his complaint, alleges as follows upon information and belief, based upon the investigation conducted by and through his attorneys, except as to those allegations pertaining to Plaintiff and his counsel personally, which are alleged upon knowledge:

### Nature of the Claim

1. This is a class action on behalf of all persons who purchased HP-compatible printer cartridges ("HP-Compatible Cartridges") from Staples or HP in the United States after Staples stopped selling its own brand of HP-Compatible Cartridges.

2. Staples is the country's largest retailer of printer cartridges, including HP-Compatible Cartridges. Prior to December 2006. Staples sold HP-Compatible Cartridges branded by HP, and its own Staples-branded HP-Compatible Cartridges ("Competing HP-Compatible Cartridges").

3. In or about December 2006, HP and Staples entered into an agreement whereby Staples, in exchange for monetary benefits from HP, now exclusively sells HP-branded HP-Compatible Cartridges and no longer sells Competing HP-Compatible Cartridges (the "HP-Staples Agreement").

4. The HP-Staples Agreement is an illegal agreement between competitors to stop competing, allocate to HP the market of Staples customers purchasing HP-Compatible Cartridges, and increase, stabilize, fix and/or maintain the price of HP-

branded HP-Compatible Cartridges sold by Staples and HP.

5. The HP-Staples Agreement is a naked restraint of trade that prevents Staples customers from purchasing lower-priced and/or higher-quality Competing HP-Compatible Cartridges, and that increases the price of HP-branded HP-Compatible Cartridges sold by Staples and HP.

6. The HP-Staples Agreement violates the Sherman Act (15 U.S.C. § 1).

7. This lawsuit seeks remedies on behalf of consumers against HP's and Staples' anticompetitive acts, including treble damages and injunctive relief restraining defendants from similar anticompetitive acts in the future under the Clayton Act (15 U.S.C. §§ 15, 26).

## Parties

### Plaintiff

8. **Ranjit Bedi:** Plaintiff Ranjit Bedi is a resident of Pacific Palisades, California. Mr. Bedi purchased an HP 710 printer in 2005 or 2006. He purchases new ink cartridges for this printer every 6 to 9 months. In February or March of 2007 Bedi went to a Staples store to buy ink cartridges for his printer, and purchased a package of three HP-branded cartridges for his printer.

### Defendants

9. **Hewlett-Packard Company:** Defendant Hewlett-Packard Company is a Delaware corporation which maintains its headquarters at 3000 Hanover Street, Palo Alto, California 94304. HP is a leading global provider of electronic products, including computer printers. HP utilizes a number of white-label manufacturers around the world to manufacture HP-designed products, including its printers and its printer cartridges.

10. **Staples, Inc.:** Defendant Staples, Inc. is a Delaware corporation which maintains its headquarters at 500 Staples Drive, Framingham, Massachusetts 01702. At the end of fiscal year 2006, Staples had 1,620 stores in 47 states, the District of Columbia, and 11 Canadian provinces in major metropolitan markets and smaller markets. Staples

recorded over $18 billion in sales for the 53 weeks prior to February 28, 2007. Staples' proprietary branded products represented approximately 20% of its total sales in 2006, are on average 10% to 15% lower than the national brand, and generated for Staples higher gross margins on average than national brands. Staples has announced in its securities filings with the SEC that its long-term goal is to grow its own branded products to 30% of total product sales. Staples, Inc., FORM 10-K at 5, *at* http://edgar.sec.gov/Archives/edgar/data/791519/000110465907015194/ a07-5769_110k.htm (Feb. 3, 2007). Staples is the largest retailer of aftermarket printer cartridges, including HP-Compatible Cartridges, in the United States.

**Jurisdiction and Venue**

11. Plaintiff Bedi asserts a claim under the Sherman Antitrust Act and seeks damages and injunctive remedies under the Clayton Act on behalf of himself and all others similarly situated. This Court has federal subject matter jurisdiction over this case under 28 U.S.C. § 1331.

12. This Court has personal jurisdiction over the Defendants under Mass. Gen. Law, ch. 223A, § 3 and 15 U.S.C. § 15 because Staples maintains its corporate headquarters in, and many of Defendants' acts alleged herein were committed in this District.

13. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(1), (2), (c) and 15 U.S.C. § 22.

**Facts**

14. HP has dominated the computer printer market in the United States for years. HP had a 59 percent share of the computer printer market at the end of 2002 and retained a 56.4 percent market share at the end of the second quarter of 2006. *HP Continues Market Share Growth in U.S. Printer Market Growth in Inkjet and Color Laser Printers Confirms HP Meeting Customer Needs*, *at* http://www.hp.com/hpinfo/ newsroom/press/ 2003/030224c.html (Feb. 24, 2003); Gartner, Inc., *Gartner Says United States Printer and MFP Shipments Declined 4 Percent in Second Quarter of 2006*, *at* http://www. gartner.com/it/page.jsp?id=496184 (Sept. 5, 2006).

15. Consumer computer printers come in two forms: inkjet printers and laser printers. This action pertains only to inkjet printers. Inkjet printers operate by spraying liquid ink onto paper. Cartridges for inkjet printers are replaceable components that contain one or more partitioned ink reservoirs, which supply the printer heads that spray the ink onto the paper (and potentially other components as well, such as electronic contacts or a microchip).

16. Staples is the largest retailer of printer cartridges in the United States. Staples' estimated gross profits on its sales of HP-branded HP-Compatible Cartridges exceeded $300 million in 2006, and its estimated gross profits on sales of Competing HP-Compatible Cartridges exceeded $75 million in 2006. Staples' profit margin on Competing HP-Compatible Cartridges has consistently been higher than its profit margin for HP-branded HP-Compatible Cartridges.

17. Printer cartridges are not fungible, but rather are manufactured to fit specifically in a particular printer brand (such as HP, Epson or Canon), and even in a particular model or set of models of a brand.

18. Printers are typically sold with an initial set of printer cartridges inside. After the initial printer cartridges are exhausted and no longer dispense ink, the printer owner must purchase compatible replacement printer cartridges. Printers are often sold at a loss, while printer manufacturers maintain large profit margins on their replacement printer cartridges.

19. Printer cartridges branded by companies such as Staples are priced lower than printer cartridges branded by the printer manufacturer, such as HP, and make up as much as 25% of the U.S. retail market for replacement printer cartridges.

20. Prior to December 2006, Staples and HP competed in the U.S. retail market for HP-Compatible Cartridges. Both Staples and HP contracted with white-label manufacturers to make HP-Compatible Cartridges that were marketed and sold to consumers.

21. In 2006, HP approached Staples and other retailers, and offerred them monetary

incentives under the guise of "market development funds," in exchange for the retailers' agreement to stop selling Competing HP-Compatible Cartridges.

22. Staples and HP entered into the HP-Staples Agreement in or about December 2006. Pursuant to the HP-Staples Agreement, Staples has stopped selling all Competing HP-Compatible Cartridges and allocated to HP the market of Staples customers purchasing HP-Compatible Cartridges. In exchange, HP pays monetary incentives and benefits to Staples as "marketing incentives." Plaintiffs believe that the total value of the incentives exceeds $100 million.

23. The HP-Staples agreement is a horizontal agreement between direct competitors. It reduces the output of HP-Compatible Cartridges, increases the price of HP-Compatible Cartridges, eliminates interbrand competition between Staples and HP, and limits non-price competition in the market for HP-Compatible Cartridges.

24. Defendants sold printer cartridges in a continuous and uninterrupted flow of interstate commerce throughout the class period. Defendants' business activities that are the subject of the Complaint were therefore within the flow of and substantially affected interstate trade and commerce.

**Class Certification Allegations**

25. Plaintiff seeks certification of a Class for both injunctive and monetary relief under the Clayton Act (15 U.S.C. § 15, 26). Plaintiff seeks certification under both Rule 23(b)(2) and Rule 23(b)(3).

26. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this Complaint against Defendants on behalf of himself and all persons who purchased one or more HP-Compatible Cartridges directly from Staples or HP after Staples stopped selling its Competing HP-Compatible Cartridges (the "Class"). Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents has a controlling interest and their current or former employees, officers and directors, and all of their co-conspirators;

3) the legal representatives, successors or assigns of any such persons; and 4) any government entities.

27. Individual joinder of all Class members is impracticable. Staples has 1,620 stores in the U.S. and Canada, and its profits on its sales of HP-Compatible Cartridges exceeded $375 million in 2006. The volume of relevant sales alone indicates that there are at least many thousands of Class members.

28. Common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual Class members. These common questions include:

(a) Whether HP and Staples entered into a contract, agreement, or conspiracy to stop competing in the U.S. retail market for HP-Compatible Cartridges;

(b) Whether such contract, agreement or conspiracy caused the prices Staples and HP charged its customers for HP-Compatible Cartridges to be artificially inflated;

(c) Whether the HP-Staples Agreement violates Section 1 of the Sherman Act;

(d) Whether plaintiff and the Class are entitled to relief, and the nature of such relief; and

(e) The appropriate measure of damages sustained by plaintiffs and other members of the Class.

29. Plaintiff's claims are typical of the claims of other Class members, as the wrongful conduct of Defendants threatens Plaintiff and other Class members with the same injury and/or damages arising out of and based upon the same transactions, made uniformly to Plaintiff and the public.

30. Plaintiff will fairly and adequately represent and protect the interests of the other Class members, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

31. This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this

controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants. It would be virtually impossible for the Class members individually to obtain effective relief from the misconduct of Defendants. Even if members of the Class or Subclass themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

32. This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The policies of Defendants challenged herein apply and affect the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

**Count I: Violation of the Sherman Act, 15 U.S.C. § 1**

33. Plaintiff incorporates the above allegations by reference.

34. Defendants are two separate entities that are direct competitors in the U.S. retail market for HP-Compatible Cartridges.

35. Defendants entered into the HP-Staples Agreement.

36. The HP-Staples Agreement is a contract, agreement and/or conspiracy that unreasonably restrains trade and is *per se* unlawful.

37. The HP- Staples Agreement has the anticompetitive effect of reducing output, restraining price competition, fixing, raising, maintaining and stabilizing prices at

artificially high levels, and depriving consumers of the benefits of free and open competition.

38. Plaintiff seeks injunctive relief enjoining the continued effectuation of the HP-Staples Agreement and other acts alleged herein, and the cost of this suit, including reasonable attorneys' fees, under the Clayton Act (15 U.S.C. § 26). In addition, Plaintiff seeks treble damages, with interest, the cost of this suit, and reasonable attorneys' fees, under the Clayton Act (15 U.S.C. § 25).

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendants as follows:

(a) Certifying the action as a class action and designating Plaintiff and his counsel as representatives of the Class;

(b) Treble damages in an amount to be determined at trial against HP and Staples and in favor of the Class;

(c) An injunction against further anticompetitive acts, and the costs of the suit, including a reasonable attorneys' fee, against HP and Staples and in favor of the Class;

(d) Awarding pre- and post-judgment interest; and

(e) Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

The Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: December 13, 2007

By: ______________________

Counsel for Plaintiff, Ranjit Bedi

Mary June Ciresi
91 Friendship Street, 4th Floor
Providence, RI 02903
Tel: 401-455-9600
Fax: 401-453-5903
mjciresi@ciresilaw.com

Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908
Tel: 401-831-7730
Fax: 401-861-6064
PNWLAW@aol.com

Michael J. Boni
Joshua D. Snyder
BONI & ZACK, LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
(610) 822-0200
MBoni@bonizack.com
JSnyder@bonizack.com

Jay Edelson
Ethan Preston
KAMBEREDELSON LLC
53 West Jackson Blvd, Suite 1530
Chicago, IL 60604
312-589-6370
jedelson@kamberedelson.com
epreston@kamberedelson.com

David C. Parisi
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com