UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 07-12318-RWZ

RANJIT BEDI

v.

HEWLETT-PACKARD COMPANY and STAPLES, INC.

MEMORANDUM AND ORDER

November 17, 2008

ZOBEL, D.J.

     Hewlett-Packard Company ("HP") provides thousands of electronic products, including inkjet printing systems, and sells HP-brand ink cartridges for use in HP printers. Staples, Inc. ("Staples") is a retailer of office products, including inkjet printers and ink cartridges. Prior to 2006, Staples sold both HP ink cartridges and its own brand of HP-compatible ink cartridges.[1] In December 2006, HP and Staples entered into a Strategic Enterprise Alliance Agreement (the "SEA"). Under one of the provisions of the SEA Staples agreed to cease selling its brand of HP-compatible cartridges and to "[e]xclusively promote HP brand ink and toner as the exclusive solution in their categories at Staples' retail" stores. (SEA (Docket # 24) ¶ B(2).) Plaintiff claims that the SEA amounts to a per se violation of the Sherman Act. Defendants have moved to dismiss.

     For purposes of the motion to dismiss, I accept as true all well-pleaded

---

[1] Staples contracted with so-called "white label" manufacturers to make HP-compatible cartridges that it marketed and sold under its own brand.

allegations. Ezra Charitable Trust v. Tyco Int'l, Ltd., 466 F.3d 1, 6 (1st Cir. 2006). In this instance defendants do not dispute the existence of the SEA and have filed it with the court. See Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000) (in considering the merits of a motion to dismiss, the court may consider "documents incorporated by reference in the complaint"). The parties' dispute centers on the legal consequences of the SEA. Plaintiff rests his entire entitlement to relief on a finding that the SEA is per se unlawful.

The Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Although by its terms the Act prohibits any "restraint of trade," the Supreme Court "has long recognized that Congress intended to outlaw only unreasonable restraints." State Oil Co. v. Khan, 522 U.S. 3, 10 (1997). Courts presumptively apply a "rule of reason" analysis to challenged agreements. Only agreements that have a "predictable and pernicious anticompetitive effect, and . . . limited potential for procompetitive benefit" are deemed to be per se unlawful under the Sherman Act. Id.

The parties dispute whether the SEA constitutes a vertical or horizontal restraint of trade. A review of the SEA makes clear that, although Staples and HP brand cartridges directly competed with one another, the relationship between HP and Staples is primarily a vertical one. HP is the supplier of products, while Staples is the retailer. Under the SEA, Staples receives from HP priority status of its orders for products, unique products and early product launches, as well as an assured source of

2

product supply.  In exchange, Staples promotes sales of HP products at its stores, and based upon increased levels of sales, it receives financial compensation.  Accordingly, viewing HP and Staples simply as competitors selling inkjet cartridges for HP printers is not only unduly narrow, it does not reflect the reality of their relationship.

The Supreme Court has counseled that restraints "imposed by agreement between firms at different levels of distribution" are vertical restraints.  Bus. Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 730 (1988).  Elaborating on this point, the Court noted:

> The dissent apparently believes that whether a restraint is horizontal depends on whether its anticompetitive effects are horizontal, and not upon whether it is the product of a horizontal agreement.  That is of course a conceivable way of talking, but if it were the language of antitrust analysis there would be no such thing as an unlawful vertical restraint, since all anticompetitive effects are by definition horizontal effects. . . . [A] restraint is horizontal not because it has horizontal effects, but because it is the product of a horizontal agreement.

Id. at 730 n.4 (internal citations omitted).  Vertical, non-price restraints are typically analyzed under the rule of reason standard.  See id. at 723.  Admittedly, this case is distinct from those cited by defendants in support of their assertion that all of the cases that have addressed "arrangements where a manufacturer stands in a vertical relationship to a distributor and also competes against the same distributor to a degree" have applied the rule of reason analysis.  (Docket # 36, 5.)  These so-called "dual distribution" cases typically involve a manufacturer which distributed its product both through a distributor and independently, thereby making the issue one of intrabrand competition.  See, e.g., AT & T Corp. v. JMC Telecom, LLC, 470 F.3d 525, 531 (3d Cir.

2006); Copy-Data Sys., Inc. v. Toshiba Am. Inc., 663 F.2d 405, 411 (2d Cir. 1981).  In contrast, here the HP inkjet cartridges and HP-compatible Staples-brand cartridges were separate products, making the issue one of interbrand competition.  See Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 127 S. Ct. 2705, 2715 (2007) (competition among "different brands of the same type of product" is "interbrand" competition and "'the primary purpose of the antitrust laws is to protect [this type of] competition'") (quoting Khan, 522 U.S. at 15).

Nonetheless, "the per se rule is appropriate only after courts have had considerable experience with the type of restraint at issue, and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." Leegin, 127 S. Ct. at 2713 (internal citations omitted).  The SEA, when viewed in its entirety, does not fall neatly within any of the proscribed categories of agreements that "reliably deserve" per se treatment – "those among competitors that amount to 'naked' price fixing, output restriction, or division of customers or territories," or "concerted refusals to deal or group boycotts."  E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc., 357 F.3d 1, 4 (1st Cir. 2004).  Rather, it falls within the category of "restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious." Leegin, 127 S. Ct. at 2713 (quoting Khan, 522 U.S. at 10).  Accordingly, per se treatment is not appropriate.

As plaintiff pleads solely a per se violation of the Sherman Act, defendants' motion to dismiss (Docket # 13) is ALLOWED.

|  |  |
|---|---|
| November 17, 2008 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |